UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOMRAJ SINGH, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ERIC H. HOLDER, et al.,<br><br>    Defendants. | Case No. 13-cv-04958-JCS<br><br>**REPORT AND RECOMMENDATION RE SUFFICIENCY OF COMPLAINT UNDER 28 U.S.C. § 1915** |

## I. INTRODUCTION

Plaintiffs Somraj Singh and Reena Rani filed this action on October 24, 2013 in connection with their Application for Immigrant Relative Visa, which has been pending since August 2012. They seek a hearing in this Court to adjudicate the application or, in the alternative, an order for Defendants to adjudicate the visa application and also compelling them to produce to Plaintiffs all documents in their possession necessary to prosecute the application, including documents reflecting the results of Defendants' visa investigation. Plaintiffs filed a Motion to Proceed in Forma Pauperis, which the Court granted in a separate order. Having granted Plaintiffs' request to proceed in forma pauperis, the undersigned now considers whether Plaintiffs' Complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B). Because Plaintiffs declined to consent to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c), the undersigned instructs the Clerk to reassign this case to a district court judge with the following Report and Recommendation.

## II. REVIEW OF COMPLAINT UNDER 28 U.S.C. § 1915

### A. The Complaint

On August 18, 2012, Plaintiff Somraj Singh, a resident of California and a United States

1   citizen, filed with the United States Citizenship and Immigration Service ("USCIS") an Immigrant
2   Petition for Alien Relative  (I-130) (hereinafter, "I-30 petition") to allow his wife, Reena Rani, to
3   emigrate from India to the United States.  Complaint ¶¶ 6, 19-21 and Attachments at p. 51 (copy
4   of Singh's U.S. Passport).  The I-130 petition was approved on November 19, 2012 and was
5   forwarded to the United States Department of State and the National Visa Center ("NVC") at
6   Portsmouth.  Complaint, ¶ 22.  Plaintiffs allege that they completed all "necessary papers" and that
7   an interview on their Immigrant Relative Visa Application based on the approved I-130 petition
8   was set for April 22, 2013 at the U.S. Consulate in New Delhi, India.  *Id*. ¶¶ 23-24.  They further
9   allege that Plaintiff Reena Rani attended the interview on April 22, 2013.  *Id*. ¶ 25. Plaintiffs
10  allege that they were asked to provide further documentation after the interview and that in May
11  2013 Defendants called people who lived in their village to ask them about the legitimacy of
12  Plaintiffs' marriage.  *Id*. ¶ 27.  They allege that in August 2013 Defendants visited Plaintiffs'
13  village and conducted further investigation but that since that time they have received no
14  information about the status of the Immigrant Relative Visa Application despite numerous
15  inquiries.  *Id*.  ¶¶ 25-32.  Plaintiffs allege that the only information they have been able to glean is
16  from the USCIS website, which as of October 17, 2013 had changed the status of the Immigrant
17  Relative Visa Application from "Under Administration Process" to "Returned to NVC."  *Id*. ¶ 30.
18       In the Complaint, Plaintiffs assert the following four claims:  1) a claim seeking a hearing
19  on Plaintiffs' Immigrant Relative Visa Application pursuant to 8 U.S.C. § 1447(b); 2) a claim
20  under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) ("*Bivens* claim") based
21  on alleged violation of Plaintiffs' constitutional right to due process;  3) a claim under the
22  Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, based on alleged unreasonable
23  delay of agency action; and 4) a claim seeking a writ of mandamus under the  Mandamus Act, 28
24  U.S.C. § 1361.

25
26  **B.  Legal and Regulatory Framework Governing I-130 Petitions and the Issuance of Immigrant Relative Visas**
27       USCIS is a Bureau within Department of Homeland Security ("DHS").  6 U .S.C. § 274.  It
28  has the authority to adjudicate immigrant visa petitions, including the I-130 petition to classify an

alien as an "immediate relative."  6 U.S.C. § 271(b)(1); 8 U.S.C. § 1154(a)(1)(A)(i) ("[A]ny citizen of the United States claiming that an alien is entitled . . . to an immediate relative status under section 1151(b)(2)(A)(i) of this title may file a petition with the Attorney General for such classification"); 8 C.F.R. § 204.1(a)(1) (requiring form I-130 to request "immediate relative" status).  Although Section 1154 identifies the Attorney General as the recipient of the petition, "with the 2003 creation of the Department of Homeland Security . . . this responsibility now belongs to the Secretary of DHS." *Ching v. Mayorkas*, 725 F. 3d 1149, 1155 & n. 1 (9th Cir. 2013).   "Classification [as an immediate relative] is important because aliens so classified are not subject to the world-wide numerical limitations on immigration." *Atiffi v. Kerry*, 2013 WL 5954818 (E.D. Cal. Nov. 6, 2013) (citing 8 U.S.C. § 1151(b)(2)(A)(i) ("immediate relatives" are "the children, spouses, and parents" of a U.S. citizen; they are "not subject to direct numerical limitations")).

Under 8 U.S.C. § 1154(b), if the alien on whose behalf the I-130 petition is filed is determined to be an "immediate relative," USCIS "shall . . . approve the petition and forward one copy thereof to the Department of State."  In this second phase of the visa process the application is sent to the consular office to determine whether the alien is entitled to immediate relative status. 22 C.F.R. § 42.21.[1]  If the consular officer "knows or has reason to believe that approval of the petition was obtained by fraud, misrepresentation, or other unlawful means, or that the beneficiary is not entitled, for some other reason, to the status approved," the consular officer  "shall suspend action in a petition case and return the petition, with a report of the facts, for reconsideration by DHS." 22 C.F.R. § 22.43.  Alternatively, the consular officer is required to grant "immediate

---

[1] 22 C.F.R. § 42.21 is directed at immigrant relative status and provides, in part, as follows:

 (a) Entitlement to status

An alien who is a spouse or child of a United States citizen, or a parent of a U.S. citizen at least 21 years of age, shall be classified as an immediate relative under INA 201(b) if the consular officer has received from DHS an approved Petition to Classify Status of Alien Relative for Issuance of an Immigrant Visa, filed on the alien's behalf by the U.S. citizen and approved in accordance with INA 204, and the officer is satisfied that the alien has the relationship claimed in the petition. An immediate relative shall be documented as such unless the U.S. citizen refuses to file the required petition, or unless the immediate relative is also a special immigrant under INA 101(a)(27) (A) or (B) and not subject to any numerical limitation.

3

1  relative" status to a petitioner if the officers is "satisfied" that the petitioner had "the relationship
2  claimed in the petition." 22 C.F.R. § 42.21. However, "[t]he approval of a petition does not
3  relieve the alien of the burden of establishing to the satisfaction of the consular officer that the
4  alien is eligible in all respects to receive a visa." 22 C.F.R. § 22.41. Thus, the issuance of an
5  Immigrant Relative Visa based on an approved I-130 petition involves an additional determination
6  by the consular officer that the immediate relative alien is "eligible in all respects to receive a
7  visa." *Id*.

As part of the process for determining both the correct "immigrant classification" and whether an applicant is eligible to receive a visa, the alien must personally appear before the consular officer for an interview and answer any questions "deemed material" to these determinations. 22 C.F.R. § 46.62. The consular officer may also require the applicant to submit "documents considered necessary to establish the alien's eligibility to receive an immigrant visa." 22 C.F.R. § 42.65. "When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of INA and the implementing regulations, the consular officer must either issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law." 22 C.F.R. § 42.81. If an immigrant visa is refused, the "consular officer shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available." *Id*. If the reasons for the refusal may be overcome through the submission of additional evidence, the petitioner has one year in which to submit such evidence in support of the application. *Id*.

**C. Legal Standard**

Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is granted leave to proceed in forma pauperis, courts must engage in a screening and dismiss any claims which: (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996). In addition, a complaint that lacks any basis for federal subject matter jurisdiction is subject to dismissal pursuant to § 1915(e)(2). *Cato v.*

4

*United States*, 70 F.3d 1103, 1106–07 (9th Cir.1998).

**D. Discussion**

**1. 8 U.S.C. § 1447(b)**

Plaintiffs seek a hearing under 8 U.S.C. § 1447(b), which provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b). Section 1446 establishes the process governing the determination of whether to grant an application for naturalization. "The basic requirements for a claim under this section are [that] . . . a plaintiff must have a pending naturalization petition, and that petition must have been pending for 120 days after the examination was conducted." *Musaad v. Mueller*, 627 F.Supp. 2d 804, 809 (S.D. Ohio 2007). Plaintiffs do not allege, however, that they have filed a petition for naturalization. Accordingly, the Court does not have jurisdiction to conduct a hearing on Plaintiffs' Immigrant Relative Visa Application under this provision. This claim should be dismissed with leave to amend.

**2. *Bivens* Claim**

Plaintiffs contend their right to due process under the Fifth Amendment of the United States Constitution has been violated by Defendants' failure to respond to their inquiries or provide information about the status of the Immigrant Relative Visa Application or timely adjudicate it. Plaintiffs' constitutional due process claim is sufficient to survive the Court's § 1915 review.

The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To establish a violation of substantive or procedural due process, a plaintiff must show he or she has a "liberty or property interest protected by the Constitution." *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (citing *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th

1   Cir. 1994)).   Here, Plaintiffs' allegations are sufficient to show that they have both a property
2   interest and a liberty interest at stake and therefore are entitled to constitutional due process.
3       A plaintiff has a property interest in a benefit to which there is a "legitimate claim of
4   entitlement." *Id*. (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).
5   Whether such a claim exists "is determined largely by the language of the statute and the extent to
6   which the entitlement is couched in mandatory terms." *Id*. (citing *Wedges/Ledges of Cal., Inc. v.
7   City of Phoenix*, 24 F.3d at 62) (internal quotations omitted).   In *Ching*, an alien, who was a native
8   of China legally residing in the United States, and her husband, a United States citizen, had
9   submitted an I-130 visa petition for an immediate relative.  725 F.3d at 1153.   The USCIS denied
10  the petition based on a statement by the alien's ex-husband indicating that his marriage with her
11  was not legitimate. *Id*.   The petitioners challenged the denial in federal district court asserting that
12  they had been denied their right to due process because they were not given an opportunity to
13  cross-examine the ex-husband. *Id*. at 1154.   On summary judgment, the district court held that the
14  plaintiffs did not have a due process interest in the I-130 petition because there was not liberty or
15  property interest at stake, but the Ninth Circuit disagreed. *Id*. at 1154-1155.
16      The Ninth Circuit in *Ching* found that the plaintiffs had a property interest in the I-130
17  petition because the language of the relevant statutory provision created a mandatory entitlement,
18  reasoning as follows:

>   Section 204(b) of the INA provides that "After an investigation of the facts in each case, . . . the [Secretary of Homeland Security ("Secretary") . . . *shall*, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative [,] . . . *approve the petition*. . . ." 8 U.S.C. § 1154(b) . . . . The decision of whether to approve an I–130 visa petition is a nondiscretionary one because "determinations that 'require application of law to factual determinations' are nondiscretionary." *Hernandez v. Ashcroft*, 345 F.3d 824, 833–34 (9th Cir.2003) (internal alteration omitted); see also *Garfias–Rodriguez v. Holder*, 702 F.3d 504, 525–26 n. 16 (9th Cir. 2012) (en banc) (contrasting INA § 204(b)'s language with discretionary authority elsewhere in the INA); *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 691 (9th Cir. 2003) (explaining that INA § 204(b)'s instruction that the Attorney General "shall . . . approve the petition" suggests that the provision is nondiscretionary).

28  *Id*. (emphasis in original).  The court  went on to hold that "[i]mmediate relative status for an alien

6

spouse is a right to which citizen applicants are entitled as long as the petitioner and spouse beneficiary meet the statutory and regulatory requirements for eligibility [and therefore] [t]his protected interest is entitled to the protections of due process." On that basis, the court held that the petitioners had a constitutional right to due process as to their I-130 petition . *Id*.

In *Ching*, the facts were distinguishable from those alleged here to the extent that the alien spouse was already legally residing in the United States when the I-130 petition was filed. 725 F.3d at 1153. Consequently, the second stage of the process described above, in which a consular officer determines the alien's immigrant status and, if appropriate, classifies the alien as an immediate relative, was not at issue. However, the court in *Ching* relied on an earlier Ninth Circuit decision in support of its holding *Bustamante v. Mukaey*, in which the alien spouse was residing outside of the United States and therefore was seeking a visa through the consulate, as is the case here. *Id*. at 1155 (citing *Bustamante v. Mukasey*, 531 F.3d 1059 (9th Cir. 2008)).

In *Bustamante*, a United States citizen, Alma Bustamante, filed an immediate relative petition seeking a visa for her husband, Jose Bustamante, who resided in Mexico. 531 F.3d at 1060. The consular officer in Mexico told the petitioners that he had reason to believe Jose was trafficking in illegal drugs but would not reveal the identity of the informant who had provided this information. *Id*. At a meeting between Jose and officials of the U.S. Drug Enforcement Agency, Jose was told that if he agreed to become an informant his visa troubles "would go away" but that if he did not, he would never be granted a visa or become a lawful permanent resident in the United States. *Id*. at 1061. Jose refused to become an informant and his visa was denied. *Id*. Subsequently, the petitioners filed an action in federal district court asserting that the imposition of a condition that Jose become an informant in order to receive a visa amounted to a denial of procedural due process. *Id*. The district court dismissed the complaint based, in part, on the general rule that "the decisions of consular officers to grant or deny visas are not subject to judicial review." *Id*. (citing *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986)). The Ninth Circuit, however, found that the plaintiffs' claim fell within a "limited exception" to this rule "where the denial of a visa implicates the constitutional rights of American citizens." *Id*. In particular, the court found that Alma – a U.S. citizen – had a liberty interest in her

1   marriage that gave rise to a right to constitutionally adequate procedures.  *Id*. at 1062.  The Court

2   further found that to satisfy the requirements of due process the defendants were required to

3   provide a reason for the visa denial that was both "facially legitimate and bona fide."  *Id*.  Based

4   on the allegations and the evidence in the record, the court concluded this requirement was

5   satisfied.  *Id*.

6   Read together, *Ching* and *Bustamante* indicate that applicants seeking an I-130 petition

7   visa for an alien spouse are entitled to procedural due process under the U.S. Constitution based

8   on both the mandatory language in the relevant statutory provision and the liberty interest in the

9   freedom to marry, which is protected under the due process clause.  These cases also indicate that

10  the right attaches whether the I-130 petition and visa application are being adjudicated by the

11  USCIS or the consulate.  Therefore, the Court concludes that Plaintiffs have a right to

12  constitutionally adequate process in connection with the adjudication of their I-130 petition and

13  Immigrant Relative Visa Application.

14  The Court next addresses whether Plaintiffs have alleged facts sufficient to show that their

15  due process rights have been denied by the delay in processing the petition and Defendants' failure

16  to provide Plaintiffs with information regarding the status of the application.  "Due process is

17  flexible and calls for such procedural protections as the particular situation demands."  *Gilbert v.*

18  *Homar*, 520 U.S. 924, 930 (1997).   To determine the requirements of due process in any given

19  case courts weigh the following three factors identified by the Supreme Court:

20  > First, the private interest that will be affected by the official action;
21  > second, the risk of an erroneous deprivation of such interest through
    > the procedures used, and the probable value, if any, of additional or
    > substitute procedural safeguards; and finally, the Government's
22  > interest. . . .

23  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

24  In *Ching*, the Ninth Circuit considered the *Matthews* factors to determine whether the

25  petitioners had been afforded constitutionally adequate due process.  725 F.3d at 1157-1159.  The

26  court found that the first two factors both should be given "extreme weight."  *Id*. at 1159.  As to

27  the private interest, the court noted that "[t]he right to live with and not be separated from one's

28  immediate family is a 'right that ranks high among the interests of the individual' and that cannot

be taken away without procedural due process." *Id*. at 1157 (quoting *Landon v. Pasencia*, 459 U.S. 21, 34-35 (1982)). With respect to the second factor, "the risk of an erroneous deprivation of such interest through the procedures used," the court considered the factual circumstances surrounding the statement obtained from the ex-husband, noting that USCIS officer went to his home to obtain the statement and that "an unexpected visit from government officers can be quite intimidating." *Id*. at 1158. It found that the "[t]he risk of erroneous deprivation is particularly high in a case such as this, where the visa petitioner has substantial evidence that the first marriage was bona fide." *Id*. Finally, the court considered the government's interests in terms of the fiscal and administrative burden that would be imposed by the additional procedural requirements at issue. *Id*. Weighing these three factors, the court concluded that the petitioners were entitled to a hearing at which the alien petitioner would be able to confront her ex-husband and that failure to conduct such a hearing amounted to a denial of due process. *Id*. at 1159.

Here, Plaintiffs have alleged that the delay and uncertainty associated with Defendants' conduct has caused Plaintiffs to be "separated and disunited" and to be "ostracized by the traditional Indian members who could not understand why a husband should choose to live separately from his wife contrary to her culture and religion." Complaint ¶¶ 32, 43. Given the weight that is given to the right to live with one's immediate family, at least the delay alleged in the Complaint indicates that the first factor of *Matthews* has some weight under the circumstances of this case.

It is less clear what weight should be given to the second and third factors, which may turn on the factual circumstances of this case, some of which are outside Plaintiffs' knowledge and therefore cannot be alleged in the complaint. Further, as the United States has not yet appeared in this action, it is impossible for the Court to evaluate in a meaningful way the burden that would be imposed by requiring additional procedures in connection with the processing of Plaintiffs' I-130 petition and visa application. The Court therefore concludes that it is premature to conduct the weighing process called for under *Matthews*, which is more suitably addressed at the summary judgment stage of the case when a factual record has been developed – or at least, after the United States has appeared in this action and articulated its interests. On that basis, the Court concludes

1  that Plaintiffs' allegations in support of their due process claim are sufficient to survive review
2  under § 1915.

### 3. Mandamus Act

The Mandamus Act states, in its entirety: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus is an extraordinary remedy." *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994) (citing *Stang v. IRS*, 788 F.2d 564, 565 (9th Cir.1986)). A district court may issue a writ of mandamus under § 1361 "only when (1) the plaintiff's claim is 'clear and certain'; (2) the defendant official's duty to act is ministerial, and 'so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Barron*, 13 F.3d at 1374. As a general rule, "mandamus may not be used to impinge upon an official's legitimate use of discretion." *Id.* at 1376. The Ninth Circuit has held, however, that the failure of a consulate to either grant or deny a visa application based on an approved I-130 petition is sufficient to give rise to jurisdiction under the Mandamus Act. *Patel v. Reno*, 134 F.3d 929 (9th Cir. 1998).

In *Patel*, a naturalized U.S. citizen filed an I-130 petition seeking immediate relative status and a visa for his spouse, who was residing in India. *Id.* at 931. The I-130 visa petition was filed by the Patels in October 1988 but five years later the visa had neither been granted or denied. *Id.* Despite numerous inquiries, the Patels could obtain no information about the status of their petition. *Id.* Unbeknownst to them, the consulate had uncovered information that led it to believe that Mr. Patel's previous marriage, which had led to his naturalization as a U.S. citizen, was void because he was already married at the time of that earlier marriage. *Id.* Consequently, the consulate had sent the petition back to the INS (the predecessor of USCIS as to the processing of I-130 petitions) for further action against Mr. Patel. *Id.* At this point, the Patels filed an action in federal district court seeking a writ of mandamus ordering that the petition be either granted or denied. *Id.* To settle that action, the INS agreed to return the petition to the consulate in Bombay, but it also told the consulate that denaturalization proceedings had begun against Mr. Patel. *Id.* In fact, denaturalization proceedings had not been initiated. *Id.* In response to a subsequent inquiry

1   from the petitioners' counsel, the consulate informed petitioners that their application was refused
2   until Mr. Patel's denaturalization proceeding was concluded. *Id*. At that point, the petitioners
3   reinstated their mandamus action but the district court dismissed the action on summary judgment.
4   *Id*.

5   On appeal, the Ninth Circuit addressed whether the plaintiffs could bring a mandamus
6   action against the consulate for failure to adjudicate their I-130 visa petition and found that they
7   could. *Id*. at 931-932. Acknowledging that "[n]ormally a consular official's discretionary
8   decision to grant or deny a visa petition is not subject to judicial review," the court explained that
9   there is jurisdiction "when the suit challenges the authority of the consul to take or fail to take an
10  action as opposed to a decision taken within the consul's discretion." *Id*. The court further found
11  that "[a] consular officer is required to act on a visa application." *Id*. at 932 (citing 22 C.F.R. §
12  42.81). The consulate did not do so, however, the court found. *Id*. The letter to the plaintiff's
13  counsel informing them that the application was denied pending resolution of the denaturalization
14  proceedings did not comply with the regulatory procedures set forth in 22 C.F.R. § 42.81(b),
15  governing the refusal procedures for visa applications, the court held. *Id*. Nor was the consulate's
16  failure to act on the visa application a permissible suspension under 22 C.F.R. § 42.43 because the
17  consulate did not return the application to the INS for a final disposition, as required. *Id*. The
18  court concluded, "the consulate had a duty to act and . . .to date, eight years after application of the
19  visas, the consulate has failed to act in accordance with that duty and the writ should issue." *Id*. at
20  933.

21  In *Razaq v. Poulos*, the court reached a similar conclusion. *See* 2007 WL 61884
22  (N.D.Cal., January 08, 2007). There, an I-130 petition had been filed on the alien petitioner's
23  behalf by his spouse, who was a United States citizen, and at the time the action was filed in
24  federal district court, the I-130 petition still had not been adjudicated.  *Id*. at *1. The petitioners
25  sought a writ of mandamus seeking to compel the USCIS to adjudicate the petition and USCIS
26  brought a motion for summary judgment asserting that there was no jurisdiction under the
27  Mandamus Act because the act the petitioners sought to compel was discretionary rather than
28  ministerial. *Id*. at * 2. The court rejected USCIS's argument, pointing to the same mandatory

11

language of § 1154(b) that is cited in the Ninth Circuit's recent *Ching* decision, discussed above, in support of the conclusion that the Immigration and Naturalization Act and the regulations issued pursuant to it "impose on the executive branch a clear duty to either grant or deny petitioner's I-130 petition. The agency is not authorized to hold onto the petition and make no decision." *Id*. at * 3.

The court in *Razaq v. Poulos* went on to reject the assertion that there was no jurisdiction because no specific deadlines for processing I-130 applications are set forth in the relevant statutes or regulations, reasoning as follows:

> Congress expected the executive branch to receive applications of this kind and then to "adjudicate" them to a decision. It is equally clear that Congress had to have intended the executive branch to complete these "adjudications" within a reasonable time – because imposing no time constraint at all on the executive branch would be tantamount to giving the government the power to decide whether it would decide. If Congress had wanted to give the executive branch that power, the power to decide whether to decide, it would have been obvious to Congress how to articulate that intention. But Congress followed no such course. Instead, by using the phrase of legal art "shall," Congress ordered the executive branch to make decisions on these applications. . . .
>
> Congress imposes many duties on executive agencies without prescribing specific time frames for their completion. This is a wise course – as Congress recognizes that in many instances it will not have sufficient information to impose deadlines that adequately take into account a host of potentially relevant variables. Recognizing that there will be instances in which it would be unwise to impose rigid deadlines on agencies dealing with a wide variety of circumstances, many not fully predictable, Congress enacted a generally applicable prescription that would offer agencies the time they legitimately needed to complete their assigned tasks but that would not permit those agencies to evade their duties altogether by retreating indefinitely into inaction. This prescription applies, through the Administrative Procedure Act, when Congress imposes a duty but does not articulate a specific time frame within which that duty must be honored. . . .
>
> [W]e reject respondents' argument that the absence of a statutorily specified deadline, by itself, changes the character of the government's duty from ministerial to discretionary. The duty that the petitioners want this Court to compel the government to honor is the duty to make a decision –a duty that can be real only if it must be honored sometime.

*Id*. at 3-4; *see also Dong v. Chertoff*, 513 F.Supp. 2d 1158, 1163 (N.D. Cal., 2007) ("[The issue of whether an adjustment of status application must be adjudicated in a reasonable period of time]

has come before the Northern District of California at least nine previous times in recent months (*ten if an analogous examination of an I-130 application is counted*), and in each instance, the position advanced by the government has been rejected and an obligation to process such applications in a reasonable period of time has been found") (emphasis added).

Plaintiffs in this action allege that they have completed all required paperwork, that Plaintiff Rani has appeared at an interview at the U.S. Consulate in New Delhi and they have been unable obtain any information about the status of their I-130 petition for many months. Although the Court finds no statutory or regulatory requirement that an I-130 visa petition be decided in any specific time frame, the consular office is required to grant "immediate relative" status to a petitioner if the officers is "satisfied" that the petitioner had "the relationship claimed in the petition." 22 C.F.R. § 42.21. Similarly, as discussed in *Ragaz*, the USCIS has a non-discretionary duty to act on I-130 petitions. Thus, whatever the cause of the delay in adjudicating Plaintiffs' I-130 petition and visa application, Plaintiffs' allegations are sufficient to support their petition for mandamus relief for the purposes of the Court's § 1915 review.

### 4. The APA

Under the APA, an agency has a duty to conclude a matter presented to it within a "reasonable time." 5 U.S.C. § 555(b). The APA allows a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, the APA does not apply where the statute at issue "precludes judicial review" or the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). The APA does not, in itself, provide an independent basis for subject matter jurisdiction. See *Califano v. Sanders*, 430 U.S. 99, 107 (1977). However, the APA, in conjunction with 28 U.S.C. § 1331 (providing for jurisdiction over questions of federal law) provides a federal court with the jurisdiction required to compel a government agent to act when such action has been impermissibly withheld. 5 U.S.C. § 706(1); *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 61, 64 (2004).

Relief under the federal mandamus statute and relief under section 706 of the APA are essentially equivalent when a plaintiff seeks an order compelling an agency to take action. *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing *Japan Whaling*

1 *Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 n4 (1986)). For the reasons discussed
2 above, the relief Plaintiffs seek under the APA – that the Defendants act on their I-130 petition
3 and Immigrant Relative Visa Application within a reasonable period of time – does not involve
4 agency discretion. Nor do the relevant statutes preclude judicial review of Plaintiffs' claim.
5 Therefore, Plaintiffs' claim under the APA is sufficient to satisfy the Court's § 1915 review.

### III. CONCLUSION

The undersigned concludes that Plaintiffs' claim under 8 U.S.C. § 1447(b) should be dismissed with leave to amend because Plaintiffs have not alleged that they have a pending naturalization application. In all other respects the Court finds that Plaintiffs' Complaint is sufficient to survive review under 28 U.S.C. § 1915. Accordingly, it is recommended that the district court order the United States Marshal to serve the Complaint on the Defendants.[2]

Dated: December 9, 2013

_____
JOSEPH C. SPERO
United States Magistrate Judge

---

[2] It appears Plaintiffs have made an effort to serve the Defendants. While the Court cannot determine from the information in the record whether service was adequate, the district court may choose to wait to order service until 60 days have passed from the date of service to see if the Government appears in this action, potentially making it unnecessary for the Marshal to effectuate service.

14